## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.: 18-cv-

OTTER PRODUCTS, LLC and
TREEFROG DEVELOPMENTS, INC.,

      Plaintiffs,

v.

SIMPLE CELL INC.,
NICK SKELLY, and
JOHN DOES 1-10, individually or as corporate/business entities,

      Defendants.

---

## COMPLAINT FOR DAMAGES, INJUNCTIVE AND OTHER RELIEF FOR VIOLATIONS OF 15 U.S.C. § 1114; 15 U.S.C. § 1125(a); 15 U.S.C. § 1125(c); AND RELATED CLAIMS; AND JURY DEMAND

---

Plaintiffs Otter Products, LLC ("Otter") and TreeFrog Developments, Inc. ("TreeFrog") (collectively, "Plaintiffs") sue Defendants Simple Cell Inc. ("Simple Cell"), Nick Skelly ("Skelly") and John Does 1-10 ("Doe Defendants") (collectively, "Defendants") for trademark infringement in violation of the Lanham Act, 15 U.S.C. §§ 1114 and 15 U.S.C. § 1125; false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(b); unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a); trademark dilution in violation of the Lanham Act, 15 U.S.C. § 1125(c); common law trademark infringement; unfair and deceptive business practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*; and tortious interference with contract and business relations, and allege as follows. These claims arise out of Defendants' infringement of Plaintiffs' trademarks in connection with

Defendants' unlawful and unauthorized advertisement and sale of OtterBox®- and LifeProof®-brand products on the Internet, including the sale of fake, defective, damaged, and poor quality products bearing the OtterBox® and LifeProof® marks.

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Otter Products, LLC is a Colorado limited liability company with its principal place of business in Fort Collins, Colorado.

2.      Plaintiff TreeFrog Developments, Inc. is a Delaware corporation with its principal place of business in Fort Collins, Colorado.

3.      Upon information and belief, Defendant Simple Cell Inc. is a Maryland corporation with its principal place of business in Eldersburg, Maryland that operates and does business throughout the United States as the "Re-Com" storefront on www.amazon.com ("Amazon") and the "Simple Cell Inc" storefront on www.walmart.com ("Walmart").

4.      Upon information and belief, Defendant Nick Skelly is a natural person who resides in Mount Airy, Maryland and who operates and does business throughout the United States as the "Re-Com" storefront on Amazon and the "Simple Cell Inc" storefront on Walmart. Upon information and belief, Mr. Skelly directs, controls, ratifies, participates in, and is the moving force behind the unlawful activity alleged herein.

5.      The true names, involvement, and capacities, whether individual, corporate, associated or otherwise of the Doe Defendants are unknown to Plaintiffs.  Therefore, Plaintiffs sue the Doe Defendants by a fictitious name.  Plaintiffs are informed and believe, and on that basis allege, that the Doe Defendants sued herein are equally responsible for the events and occurrences referred to herein or otherwise interested in the outcome of the dispute.  When the

true names, involvement, and capacities of these parties are ascertained, Plaintiffs will seek leave to amend this Complaint accordingly.

6.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338, and 28 U.S.C. § 1367.  Otter's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the state law are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

7.     This Court has personal jurisdiction over Defendants because they have sold, distributed, shipped, marketed, and advertised infringing goods bearing Plaintiffs' trademarks in Colorado and have done so with the knowledge that Plaintiffs are located in Colorado and will be harmed by Defendants' actions in Colorado.

8.     Defendants are subject to the Court's personal jurisdiction with respect to this action pursuant to Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124(1)(a), as persons transacting business within the State of Colorado.

9.     Defendants are subject to the Court's personal jurisdiction with respect to this action pursuant to Colorado's long-arm statute, Colo. Rev. Stat. § 13-1-124(1)(b), as persons committing tortious acts within the State of Colorado.

10.     This Court has personal jurisdiction over Defendants sufficient to satisfy Constitutional due process because each Defendant has sufficient minimum contacts with the State of Colorado with respect to the subject matter of this action, such that each could reasonably anticipate being brought into court in this forum.  Defendants have purposefully directed their activities at the State of Colorado purposefully availed themselves of the privilege

of doing business in the State of Colorado by operating multiple highly interactive online storefronts in which they sell, distribute, ship, market, and advertise infringing goods bearing Plaintiffs' trademarks in Colorado. Through these interactive online storefronts, Defendants have advertised, sold, and shipped infringing products bearing Plaintiffs' trademarks in Colorado and to Colorado consumers. Defendants' actions have caused injury to Plaintiffs in Colorado and Defendants engaged in these actions with the knowledge that their actions would cause injury to Plaintiffs in Colorado.

11.     Venue is proper in this District and in this Division under, without limitation, 28 U.S.C. § 1391(b)(2)-(3), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### Plaintiffs And Their Trademarks

12.     Plaintiffs develop, manufacture, market, and sell premium mobile device, smartphone, and tablet cases and accessories, and outdoor products such as coolers and drybags, under the OtterBox® brand ("OtterBox Products") and LifeProof® brand ("LifeProof Products") (collectively, "Otter Products"). Plaintiffs sell Otter Products exclusively through a network of authorized resellers ("Authorized Resellers").

13.     Plaintiffs devote a significant amount of time, energy, and resources toward protecting the value of the OtterBox and LifeProof brands, products, names, and reputation. By distributing Otter Products exclusively through their own website and through Authorized Resellers, Plaintiffs are able to ensure the safety and satisfaction of consumers and maintain the integrity and reputation of the OtterBox and LifeProof brands. In the highly competitive mobile

device accessories and outdoor products industries, quality, customer support, and warranties are fundamental to a customer's decision to purchase a product.

14.     To promote and protect the OtterBox brand, Otter has registered several trademarks with the United States Patent and Trademark Office, including, but not limited to: OTTERBOX® (U.S. Trademark Reg. Nos. 5,439,652; 5,498,180; 4,602,221; and 3,788,534); DEFENDER SERIES® (U.S. Trademark Reg. No. 4,616,874); STRADA SERIES® (U.S. Trademark Reg. No. 4,864,518); STATEMENT SERIES® (U.S. Trademark Reg. No. 4,952,893); SYMMETRY SERIES® (U.S. Trademark Reg. No. 4,709,178); PURSUIT SERIES® (U.S. Trademark Reg. No. 4,280,846); ALPHA GLASS® (U.S. Trademark Reg. No. 4,702,961); VENTURE® (U.S. Trademark Reg. No. 5,449,981); TROOPER® (U.S. Trademark Reg. No. 5,496,963); and ELEVATION® (U.S. Trademark Reg. No. 5,444,887) (collectively, the "OtterBox Trademarks").

15.     To promote and protect the LifeProof brand, TreeFrog has numerous trademarks with the United States Patent and Trademark Office, including, but not limited to: LIFEPROOF® (U.S. Registration Nos. 4,519,288; 4,520,890; 4,360,963; and 4,057,201); LIFEJACKET® (U.S. Registration No. 4,354,783); and LET'S GO!® (U.S. Registration No. 4,285,129).

16.     The registrations for the OtterBox Trademarks and LifeProof Trademarks (collectively, the "Otter Trademarks") are valid, subsisting and in full force and effect.

17.     Pursuant to 15 U.S.C. § 1065, the Otter Trademarks serve as conclusive evidence of Plaintiffs' ownership of the marks and right to use and direct the use of the marks in

commerce and in connection with the sale and distribution of OtterBox- and LifeProof-brand products identified in the registrations, as provided by 15 U.S.C. § 1115(b).

18.     Otter filed the OTTERBOX® trademark in April 2009, and it was registered in May 2010.  Otter has actively used the OTTERBOX® trademark since that time.

19.     Otter actively uses, advertises, and markets all of the Otter Trademarks in commerce throughout the United States.

20.     Consumers recognize the Otter Trademarks as being associated with mobile device cases and accessories and outdoor products on the leading edge of innovation, quality, and durability, in those industries.

21.     Because of the quality, reliability, and durability of Otter Products, consumers trust the OtterBox and LifeProof brands and associate the OtterBox and LifeProof names with high quality, reliable, and durable products.

22.     For all of these reasons, the Otter Trademarks are widely recognized by the general consuming public of the United States and Otter is recognized as the source of products bearing the Otter Trademarks.

23.     Due to the superior quality and exclusive distribution of Otter Products, and because Otter is uniquely recognized as the source of these high quality products, the Otter Trademarks have considerable value.

### Online Marketplaces And The Challenges They Present To Otter Product Quality

24.     E-commerce retail sales have exploded over the past decade.  From 2007 to 2017, the percentage of retail sales that were completed through e-commerce channels rose from 3.1%

to 8.2%. https://www.digitalcommerce360.com/2017/02/17/us-e-commerce-sales-grow-156-2016/; https://fred.stlouisfed.org/series/ECOMPCTSA.

25.    In 2016, consumers spent $394.86 billion on e-commerce sales, a 15.6% increase from 2015. *Id.* The massive growth in e-commerce is being driven largely by sales on online marketplaces. For example, in 2016 United States consumers spent $147.0 billion in e-commerce sales on Amazon, a 31.3% increase from 2015. *Id.*

26.    While the online marketplaces have created a great deal of opportunity, they also greatly challenge a manufacturer's ability to control the quality and safety of its products.

27.    For example, consumers who purchase products through the online marketplaces cannot touch, inspect, or interact with the product before purchasing it and cannot select a different product if the one they initially select is damaged or has been tampered with. Instead, consumers must trust that the product they choose over the Internet will arrive and be of the quality they expect and typically receive from the manufacturer.

28.    The online marketplaces also allow third parties to sell products anonymously, *i.e.*, without disclosing their actual identity or sources to consumers. As such, any person who is able to obtain a manufacturer's products through unauthorized diversion can sell them on the online marketplaces without having to reveal his/her identity to the consuming public. This effectively prevents the manufacturer and the consumer from being able to reach sellers, like Defendants, and address quality concerns.

29.    It is common for these unauthorized sellers to sell diverted products of inferior or otherwise questionable quality in shipments to unwitting consumers. *See* https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-

gray-market.html. Indeed, there is an "epidemic" of counterfeit products being sold on the online marketplaces that diverters are exploiting because they know consumers trust marketplaces and assume that the products they are buying through the marketplaces are genuine. *See* https://www.bloomberg.com/news/articles/2016-11-28/amazon-gets-real-about-fakes.

30. Because these diverters, like Defendants, operate anonymously on marketplaces and undertake great measures to maintain anonymity, manufacturers have no ability to exercise control over the products they sell. A manufacturer's inability to exercise control over the quality of its products presents serious risks to the satisfaction and safety of consumers.

31. The reality of online marketplaces also poses threats to a manufacturer's ability to maintain its goodwill, reputation, and brand integrity.

32. When purchasing products on a marketplace, customers cannot easily distinguish between a manufacturer's authorized and unauthorized sellers. Indeed, on some marketplaces all sellers are listed under one product listing.

33. When a customer purchases a product on a marketplace and receives a damaged, defective, or poor quality product, the customer is much more likely to associate that frustration with the brand/manufacturer than the anonymous seller.

34. The online marketplaces give disgruntled customers a powerful and convenient forum to air their grievances about problem products – online product reviews. Any consumer who is dissatisfied with a product he/she receives can post a review on the marketplace for all other consumers across the world to see. These reviews, which are often permanently fixed, will often criticize the brand/manufacturer, not the seller.

35.     These product reviews have a significant impact on a brand's reputation.  Survey results show that 82% of United States adults sometimes consult online reviews for information when they consider buying a new product online and 40% "always" or "almost always" consult such reviews.  *See* http://www.pewinternet.org/2016/12/19/online-reviews/.

36.     Consumers place extraordinary trust in these online reviews.  Indeed, consumers are more than 10 times more likely to rely on consumer-generated product reviews than product descriptions written by manufacturers.  *See* https://www.emarketer.com/Article/Moms-Place-Trust-Other-Consumers/1007509.

37.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a manufacturer's online product listings.  According to one study, merely three negative online reviews will deter a majority (67%) of online consumers from purchasing a particular product.  *See* https://econsultancy.com/blog/7403-how-many-bad-reviews-does-it-take-to-deter-shoppers.

### Otter Products Have Been The Target Of Multiple Negative Online Marketplace Reviews From Customers Who Purchased Products From Unauthorized Sellers

38.     Plaintiffs have been victim of the issues caused by unauthorized sellers on the online marketplaces.  Indeed, Otter Products have received several negative online marketplace reviews from customers who received poor quality, defective, or knockoff products from unauthorized sellers, like Defendants.

39.     For example, on October 21, 2017, a customer, Robert Holland, complained that he received a damaged, poor quality product: "Cracked the first week I had it.  The hard outer case split.  Never saw anything like it.  Makes me think it is not a genuine Otterbox but instead a cheap copy. Very dissatisfied."

⭐☆☆☆☆ **Cracked in first week**
By Robert Holland on October 21, 2017
Color: BESPOKE WAY (BLAZER BLUE/STORMY SEAS BLUE) | Verified Purchase
Cracked the first week I had it. The hard outer case split. Never saw anything like it. Makes me think it is not a genuine Otterbox but instead a cheap copy. Very dissatisfied.

40.     On November 21, 2017, a customer, Kathryn Wade, complained that she received a poor quality product:  "STUNK like chinese chemicals (even though both inner rubber shell and outer hard plastic said MADE IN USA. . . .otterbox is going cheap now…older models of their cases did NOT stink like chinese chemicals."

⭐☆☆☆☆ **junk! stinks like chemicals, doesnt fit iphone8 correctly.**
By Kathryn Wade on November 21, 2017
Color: BLACK | Verified Purchase
STUNK like chinese chemicals (even though both inner rubber shell and outer hard plastic said MADE IN USA.
thought they claim it fits iphone8, it doesnt fit well. its really their iphone7 case, and iphone8 is LARGER than 7. its 0.1mm longer and 0.2mm wider and thicker so the hard plastic shell doesnt fit snug over the inner stinky rubber one. there are gaps all over. otterbox is going cheap now…older models of their cases did NOT stink like chinese chemicals. you can tell they changed something too in the look and feel of the rubber inner. i compared it with my wifes older iphone6 otterbox…the older ones were MUCH better, fit snug, and did not STINK like chinese toxic chemicals.

41.     On November 29, 2017, a customer, Michael H., complained he received a poor quality product that he suspected was counterfeit: "Not sure if this Otterbox Commuter case was the real deal.  Suspect it was a knock-off."

⭐☆☆☆☆ **Unhappy with Quality**
By Michael H. on November 29, 2017
Color: BLACK | Verified Purchase
Not sure if this Otterbox Commuter case was the real deal. Suspect it was a knock-off. The inside rubber piece that the phone sits in was much softer/flimsier than other Commuter cases. It does not sit flush against the phone & back of the case at the bottom no matter how you try and put it together. Picture attached to show what I mean. The inner rubber piece is also scuffing up after only putting it in your pocket a few times a day. Case has not been dropped. This is after only 1 weeks use. I have an iPhone 8+ case that sees more use and shows no wear and tear like this iPhone 8 case shows. Again, I suspect it's a fake Otterbox. I will be returning.



42.     On February 3, 2018, a customer, Dot, complained that she received a damaged product that did not match the product description:  "Ordered black and it was blue and completely broken/"."



43.    On March 18, 2018, a customer, Amazon Customer, complained that the product received did not fit the iPhone 8 as the product listing purported: "Seriously disappointed in Otterbox.. . . . This case DOES NOT fit the iPhone 8.  It says it does but the case does not properly fit the 8."



44.    On April 3, 2018, another customer, Stephanie Harvey, complained that she received a product that did not match the product description online: "I got this case assuming it would match the colors on amazon[.]  When I got the case however it was purple. . . . Now I am not sure if Otterbox was the ones who put the wrong color in the box or if it was amazon but considering a paid a decent amount of money I expected the order to match the description."



45.    Upon information and belief, other consumers have complained about the products they received from unauthorized sellers, like Defendants, including the sale of damaged, defective, tampered with, and poor quality products bearing the Otter Trademarks.

46.     Upon information and belief, some of these complaints were made by consumers in response to products that were purchased from Defendants.

**Otter Has Implemented Strict Quality Controls To Combat The Problems Presented By The Online Marketplaces, Protect The Value Of Its Trademarks, And To Ensure Customers Receive The Genuine, High Quality Products They Expect From Otter**

47.     Recognizing the risks to consumers and to the OtterBox and LifeProof reputation caused by the unauthorized sale of Otter Products on the online marketplaces, Otter has implemented quality controls that apply to Otter Products sold in both brick and mortar retail settings and online with the twin aims of protecting consumers and the value and goodwill associated with the OtterBox and LifeProof brands.

48.     The goal of these quality controls is to ensure that consumers who purchase Otter Products online receive products that feature all of the special characteristics that consumes have come to expect from products sold under the OtterBox and LifeProof names – including the OtterBox warranty, quality, and reliability.

49.     The quality controls seek to minimize the likelihood that poor quality products will reach consumers.  Preventing consumers from receiving damaged, defective, and poor quality products protects consumers from confusion and unsafe products and also protects the value and goodwill associated with the OtterBox and LifeProof brands.

50.     Otter abides by its quality control requirements and requires its Authorized Resellers to abide by the quality control requirements.

51.     Otter's ability to exercise these quality controls is essential to the integrity, safety, and quality of Otter Products, as well as the value of the Otter Trademarks and other intellectual property.

**Authorized Resellers Are Required To Adhere To Otter's
Quality Control And Customer Service Requirements**

52.     Otter maintains its strict quality controls over Otter Products by conducting all sales through its Authorized Resellers.

53.     Otter Authorized Resellers are required to abide by Otter's authorized reseller policies and agreements (the "Otter Rules.")

54.     The Otter Rules limit to whom and where Authorized Resellers may sell Otter Products.  To prevent third parties from acquiring and reselling Otter Products, the Otter Rules permit Otter's Authorized Distributors to sell Otter Products only to Authorized Resellers that are approved by Otter and permit Authorized Resellers to sell Otter Products only to end users. Authorized Resellers are specifically prohibited from selling products to other resellers or anyone who intends to resell the products.

55.     Authorized Resellers are also prohibited from selling products on unauthorized websites, including third-party marketplaces such as Amazon, eBay, Walmart Marketplace, or Craigslist, without prior written consent of Otter.

56.     These restrictions are essential to Otter's ability to exercise its quality controls over Otter Products because they allow Otter to know which of its Authorized Resellers are approved to sell online and where its Authorized Resellers are selling online.  If a quality issue arises through an online sale, Otter can identify the Authorized Reseller that made the sale, contact the Authorized Reseller, and address the issue immediately.  Otter is unable to take such action against unauthorized sellers because it does not know who these sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

57.    In addition to restricting where and how Authorized Resellers can sell Otter Products, the Otter Rules also require Authorized Resellers to adhere to Otter's quality control requirements related to the inspection, handling, and storage of Otter Products.

58.    To ensure that customers receive the genuine and high-quality products they expect from Otter, the Otter Rules require that Authorized Resellers inspect all Otter Products for damages, defects, evidence of tampering, and other non-conformance and remove all such products from inventory. Authorized Resellers are prohibited from selling damaged or defective products.

59.    The Otter Rules also require that Authorized Resellers store Otter Products in accordance with guidelines issued by Otter. This requirement helps ensure that Otter Products are stored properly and are not damaged prior to being shipped to the consumer.

60.    To avoid consumer confusion and ensure that customers receive genuine Otter Products, Authorized Resellers are prohibited from relabeling, repackaging, or altering Otter Products. Authorized Resellers must not remove, translate, or modify the contents of any label or literature on or accompanying Otter Products. Further, Authorized Resellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on Otter Products, including any serial number, UPC code, or other identifying information.

61.    Otter also ensures that consumers receive safe products by requiring that Authorized Resellers assist with recalls and other consumer safety information efforts.

62.    The Otter Rules also require that Authorized Resellers provide certain services to their customers. Authorized Resellers must familiarize themselves with the features of all Otter

Products kept in their inventory.  This requirement ensures that Authorized Resellers are uniquely qualified to recommend the Otter Products best suited for end-user consumers' needs.

63.    Following the sale of Otter Products, Authorized Resellers supply ongoing support to end-user consumers and are required to provide customer service and support by promptly responding to consumer inquiries.

64.    Otter's quality control requirements are legitimate and substantial and have been implemented so that Otter can control the quality of goods manufactured and sold under the Otter Trademarks, so as to protect consumers, as well as the value and goodwill associated with the Otter Trademarks.

65.    Otter's quality control requirements are also material, as they are designed to protect consumers and prevent them from receiving poor quality products.  Consumers would find it material and relevant to their purchasing decision to know whether an Otter Product they were considering buying was being sold by an Authorized Reseller who is subject to Otter's quality control requirements or whether the product is being sold by an unauthorized seller who is not subject to, and does not abide by, Otter's quality controls and over whom Otter is unable to exercise its quality controls.

**Given The Flood Of Poor Quality Products Being Sold By Unauthorized Sellers On Online Marketplaces And Consumers' Inability to Inspect Such Products, Otter Imposes Additional Requirements On Its Authorized Resellers Who Sell Online**

66.    Given the many unscrupulous resellers, like Defendants, selling products online today, any party wishing to sell Otter Products online must first be vetted and approved by Otter to be an authorized online reseller ("Authorized Online Resellers").  Authorized Online Resellers may sell Otter Products only on websites and through marketplace storefronts that Otter has

specifically approved, which again allows Otter to have full visibility and oversight over those parties authorized to sell its products online.

67.     Authorized Online Resellers are vetted by Otter to ensure that they meet Otter's criteria and that they will properly represent the OtterBox and LifeProof brands.

68.     Critical to Otter's ability to exercise its quality controls over products sold online is that Otter must know where its Authorized Online Resellers are selling online, and if they are selling on an online marketplace, under what storefront names.  Accordingly, Authorized Online Resellers are prohibited from selling anonymously and must clearly state their business name and current contact information on all websites where they sell.  This requirement allows Otter to verify its Authorized Online Resellers and to immediately address any quality issues or negative reviews that arise.

69.     To be approved by Otter, Authorized Online Resellers must have an appropriately registered and recognized business that meets applicable criteria (*i.e.* credit, sales history, facility requirements).

70.     Authorized Online Resellers must also have an acceptable online review history, without a significant presence of negative product or seller reviews.

71.     Authorized Online Resellers must also have an acceptable business operating record, which includes evaluating, among other things, any lawsuits, complaints, or actions related to the delivery of damaged products, misrepresented products, poor quality products, or other similar issues.

72.     In addition to complying with the quality controls and customer service requirements discussed above, Authorized Online Resellers must also adhere to several additional requirements.

73.     Authorized Online Resellers must comply with all applicable data security, accessibility, and privacy requirements.

74.     Authorized Online Resellers must agree not to represent or advertise any product as "new" that has been opened or repackaged.  Typically, if a customer returns a product that was purchased through a marketplace, the marketplace will repackage the product and allow it to be relisted as new.  Otter prohibits its Authorized Online Resellers from allowing this to occur in order to ensure that customers receive the high quality Otter Products they expect.

75.     Unless otherwise approved by Otter, Authorized Online Resellers must agree to not fulfill orders in any way that results in the shipped product not coming from product stock in the Authorized Online Resellers' possession.  Otter must review and approve any use of third-party fulfillment services.

76.     Authorized Online Resellers must also cooperate with any product tracking Otter implements or utilizes.

77.     Authorized Online Resellers must have a mechanism for soliciting customer feedback/reviews and must take appropriate steps to address that feedback.  Authorized Online Resellers must also cooperate with Otter in investigating any negative product reviews.  Again, this is a critical component of Otter's quality control program because it allows Otter to quickly address quality issues that arise, which it is unable to do for products sold by unauthorized sellers like Defendants.

78.     Authorized Online Resellers who sell on Amazon must also maintain a certain seller feedback score.

79.     Authorized Online Resellers who sell on Amazon must prevent the commingling of their Otter Products with the products of other sellers in Amazon warehouses and must prevent orders from being fulfilled in any way that potentially results in delivery to the consumer of a product from another seller's stock.  This requirement is crucial to ensuring that consumers who purchase products through Authorized Online Resellers receive genuine Otter Products. Most sellers who store products in Amazon's warehouses allow their products to be commingled with other sellers' inventory.  As such, when a consumer purchases a product through a particular storefront, the consumer could receive a product that came from the inventory of a number of different sellers, including a product that is counterfeit.  Otter's anti-commingling quality control requirement prevents this from happening and ensures that the Otter Products that are sold by its Authorized Online Resellers are products that were distributed through Otter's authorized channels and comply with Otter's quality controls.

80.     To further its efforts and ability to assure product quality and adherence to its quality control standards, protect the value and goodwill associated with the Otter brand, and to prevent consumer confusion, Otter has approved a very limited number of Authorized Online Resellers on the Amazon and Walmart Marketplaces.  This limitation allows Otter to closely monitor seller and product reviews and to promptly address any product quality issues directly with its approved sellers.  This limitation also helps prevent the confusion that exists when consumers are presented with many marketplace sellers and are unable to discern which sellers

are authorized and which are selling products that are subject to and protected by Otter's quality controls.

81.     The additional quality control requirements that Otter imposes on its Authorized Online Resellers are legitimate and substantial and have been implemented to allow Otter to control the quality of Otter Products that are sold on the online marketplaces and quickly address any quality issues that arise.

82.     These quality controls are also material, as they have been implemented to ensure that consumers purchasing Otter Products on the online marketplaces receive genuine, high-quality Otter Products that abide by Otter's quality controls.   Consumers purchasing Otter Products on the online marketplaces would find it relevant to their purchasing decision to know whether the product they are purchasing is being purchased from an Authorized Online Reseller who is subject to, and abides by, Otter's quality controls.

**Otter Audits Its Authorized Online Resellers
To Ensure They Comply With Its Quality Control Requirements**

83.     In order to ensure that its Authorized Online Resellers adhere to Otter's quality control requirements, Otter regularly monitors sales of its products online and on the online marketplaces.

84.     Pursuant to this program, Otter monitors Authorized Online Resellers and online product and seller reviews, conducts test purchases and inspections, and confirms its Authorized Online Resellers' compliance with all of its quality control and Authorized Online Reseller requirements.

85.     Otter is also able to communicate with its Authorized Online Resellers to understand the nature of any product quality issues or negative reviews and to facilitate appropriate follow-on action items.

86.     Otter is also able to discipline Authorized Online Resellers that fail to comply with its quality control requirements.

**Genuine OtterBox Products Come With A Limited Warranty;
Defendants' Products Do Not**

87.     OtterBox Products purchased from Otter and Authorized Resellers come with the OtterBox Limited Warranty (the "OtterBox Warranty").  The OtterBox Warranty provides that a customer can receive a repair or replacement product if a product has a defect in manufacturing, materials, or workmanship during the warranty period applicable to the product.

88.     As discussed above, Otter cannot ensure the quality of the products sold by unauthorized sellers, like Defendants, who are not subject to Otter's control.  For this reason, the OtterBox Warranty is not available for OtterBox Products sold by unauthorized sellers, like Defendants, who do not comply with Otter's quality controls and standards.

89.     The OtterBox Warranty is a material component of genuine OtterBox Products.

90.     Consumers would find it material and relevant to their purchasing decision to know whether an OtterBox Product they were considering buying was covered by the OtterBox Warranty.  If a consumer knew a product did not come with the OtterBox Warranty, the consumer would be less likely to purchase the product.

**Defendants Are Not Authorized Resellers Or Authorized Online Resellers And Are Illegally Selling Products Bearing The Otter Trademarks**

91.     In addition to auditing its Authorized Online Resellers, due to the risks to consumers and the reputational concerns associated with the illegal sale of products bearing the Otter Trademarks by unauthorized Internet sellers, Otter polices the sale of its products online.

92.     In the course of monitoring online listings of Otter Products, Otter discovered products bearing the Otter Trademarks being illegally sold by Defendants on Amazon under the storefront name "Re-Com" and on Walmart under the storefront name "Simple Cell Inc."

93.     Upon information and belief, Defendants created their Amazon and Walmart storefronts in 2016, and began selling products bearing the Otter Trademarks through the storefront thereafter.

94.     Defendants are not Authorized Resellers of Otter Products and are not subject to, and do not comply with, Otter's Authorized Reseller requirements or the Otter Rules.

95.     Defendants are also not Authorized Online Resellers of Otter Products and do not comply with the additional quality control requirements Otter imposes on its Authorized Online Resellers.

96.     Defendants have not applied to be Authorized Online Resellers of Otter Products and Otter has not approved Defendants to be Authorized Online Resellers of its products.

97.     Defendants could not be approved as Authorized Online Resellers because they do not comply with Otter's requirements.

98.     Defendants do not comply with Otter's requirements because they operate their business anonymously.  Defendants sell products on their Amazon storefront anonymously and do not provide customers information about their business or how to contact them.

99.     Defendants do not comply with Otter's requirements because they do not operate an appropriately registered and recognized business that satisfies the credit, sales, history, and facility requirements that otter requires of its Authorized Online Resellers.

100.    Defendants do not comply with Otter's requirements because they do not have an acceptable online review history or business operating record.   As set forth below, multiple consumers have complained about the products Defendants sold to them and that Defendants are selling fake, knockoff, and poor quality products.

101.    Despite not being approved as Authorized Resellers or Authorized Online Resellers and not meeting the quality control requirements Otter imposes on its Authorized Resellers and Authorized Online Resellers, Defendants have sold, and continue to sell, products bearing the Otter Trademarks on their Amazon and Walmart storefronts.

**Defendants Are Selling Fake, Knockoff, And Poor Quality Otter Products
Through Their Amazon And Walmart Storefronts**

102.    Defendants do not abide by Otter's quality control requirements.

103.    Evidence of Defendants' failure to comply with Otter's quality control requirements can be seen by reviewing the customer reviews on the Amazon and Walmart storefront pages.

104.    Multiple consumers have posted negative reviews about the products that Defendants sold them through their Amazon storefront.

105.    For example, on September 29, 2017, a customer complained that Defendants falsely advertised the product and sold her a used product that was advertised as new: "Item is listed as NEW but I get a card stating it is certified refurbished. That is FALSE ADVERTISING."

★☆☆☆☆   "*Item is listed as NEW but I get a card stating it is certified refurbished. That is FALSE ADVERTISING* "

By Trisha Foerster on September 18, 2017.

106.     On January 1, 2018, another customer complained about receiving a poor quality product: "poor quality broke withing [sic] one week."

★☆☆☆☆   "*poor quality broke withing one week.* "

By Rita on January 1, 2018.

107.     On May 22, 2018, another customer complained that she received a used product: "Item was not new. I opened the packaging, which was worn & bent. Kickstand fell off as soon as it was taken out. Also, minor scuffs that look like oil stains, but can't be wiped off. Returned it after inserting the kickstand. Seller deducted the return shipping cost & refunded the remainder, explaining '[n]o defects found. Item ordered, received, and returned is exactly as listed…'"

★★★☆☆   "*Item was not new. I opened the packaging, which was worn & bent. Kickstand fell off as soon as it was taken out. Also, minor scuffs that look like oil stains, but can't be wiped off. Returned it after inserting the kickstand. Seller deducted the return shipping cost & refunded the remainder, explaining "[n]o defects found. Item ordered, received, and returned is exactly as listed…"* "

Read less

By Jane on May 22, 2018.

108.     On August 6, 2018, a customer complained that Defendants sold him a counterfeit product: "Counterfeit."

★☆☆☆☆   "*Counterfeit* "

By Ben on August 6, 2018.

109.     On October 2, 2018, another customer complained about receiving a counterfeit product: "Came Fast. This is fake kind. Missing piece. Some parts will not fit together. Painted not correctly."

★★★☆☆ *"Came Fast. This is fake kind. Missing piece. Some parts will not fit together. Painted not correctly."*
By Duy on October 2, 2018.

110.    On October 6, 2018, another customer complained about receiving a poor quality product: "I received a HORRIBLE looking case that was NOT what I ordered I'm so upset as I needed the correct case for a gift !!!! This was horrible."

★☆☆☆☆ *"I received A HORRIBLE looking case that was NOT what I ordered I'm so upset as I needed the correct case for a gift !!!! This was horrible"*
By Amazon Customer on October 6, 2018.

111.    On November 14, 2018, another customer complained about receiving a defective product: "Wrong product received. Wrong product defective. NO testing/refurbishment performed."

★☆☆☆☆ *"Wrong product received. Wrong product defective. NO testing/refurbishment performed."*
By Jon W. on November 14, 2018.

112.    On November 26, 2018, another customer complained about receiving a knockoff product: "OK, I guess I finally got screwed on an Amazon order. Had to happen sooner or later. Battery does not hold a charge, it's garbage. Probably a 'knock off.'"

★☆☆☆☆ *"Ok, I guess I finally got screwed on an Amazon order. Had to happen sooner or later. Battery does not hold a charge, it's garbage. Probably a "knock off"."*
Read less
By Steve on November 26, 2018.

113.    Multiple consumers have also posted negative reviews about the products that Defendants sold them through their Walmart storefront.

114.    For example, on February 20, 2017, a customer complained about receiving a defective product: "They should check their equipment and be sure it works before selling it."

★ ☆ ☆ ☆ ☆

They should check their equipment and be sure it works before selling it.

Wacky, February 20, 2017

115.    On August 31, 2016, another customer complained about receiving a broken product: "will not back up their products. simplecell wants the customer to fix their broken merchandise they sold. Worst customer service I have ever experienced!"

★ ☆ ☆ ☆ ☆

will not back up their products. simplecell wants the customer to fix their broken merchandise they sold. Worst customer service I have ever experienced!

michael, August 31, 2016

116.    On August 28, 2016, a customer complained that Defendants sold him a fake OtterBox product: "Sold me a fake otterbox inner shell."

★ ☆ ☆ ☆ ☆

Sold me a fake otterbox inner shell

Tommy, August 28, 2016

117.    On August 1, 2016, another customer complained that Defendants sold her a counterfeit product: "They're selling counterfeit merchandises that doesn't work. I contacted them without any luck."

★ ☆ ☆ ☆ ☆

They're selling counterfeit merchandises that doesn't work. I contacted them without any luck.

Vic216, August 1, 2016

118.    On June 16, 2016, another customer complained that Defendants sold her a fake product: "Do not buy items are not authentic."

★ ☆ ☆ ☆ ☆

Do not buy items are not authentic.

Kiki, June 16, 2016

119.    These types of complaints about Defendants are typical of the complaints made about the products sold and the customer service provided by unauthorized sellers, including the sale of fake, damaged, defective, and poor quality products.

120.    Upon information and belief, additional consumers have made complaints about the products Defendants sold them, including complaints related to products bearing the Otter Trademarks.

**Defendants Do Not Abide By Otter's Quality Controls And Customer Service Requirements**

121.    Defendants do not abide by Otter's quality control measures that are imposed upon genuine Otter Products.

122.    Defendants do not comply with Otter's quality control requirements because they have not provided Otter their business information or given Otter an opportunity to vet them to determine if they meet Otter's high level of standards that they demand of their Authorized Online Resellers.

123.    Defendants do not comply with Otter's quality control requirements because they do not disclose their business name, mailing address, or email address on their Amazon storefront page.  Defendants' operation of their storefront without disclosing all of their business information prevents Otter from addressing any quality control issues or negative reviews that arise out of Defendants' sale of products bearing the Otter Trademarks, such as the complaints discussed above.

124.     Defendants also do not comply with Otter's quality control requirements because they have not disclosed to Otter where they acquire products that bear the Otter Trademarks. Defendants' failure to provide such information prevents Otter from determining if any products Defendants are selling or have sold are subject to a recall or consumer safety information effort.

125.     Defendants do not comply with Otter's quality control inspection requirements because, upon information and belief, they do not inspect the products they sell for damage, defects, evidence of tampering, and other non-conformance and remove all such products from inventory; instead, they sell products bearing the Otter Trademarks that are damaged, defective, and that have been tampered with.  As set forth above, multiple customers have complained that Defendants sold them damaged or defective products.

126.     Defendants do not comply with Otter's quality control storage requirements and, upon information and belief, do not store their products in accordance with the storage guidelines specified by Otter.

127.     Defendants do not comply with Otter's quality control storage requirements because they store their products at Amazon warehouses and, upon information and belief, allow their inventory stored at Amazon's warehouses to be commingled with other sellers' inventory. Defendants' failure to comply with this quality control requirement results in their products being commingled with fake, knockoff, and tampered with products from other sellers, and ultimately results in consumers purchasing fake, knockoff, and tampered with products from Defendants' storefront. Indeed, multiple consumers have complained that Defendants sold them fake or knockoff products.

128.    Defendants do not comply with Otter's quality control storage requirements because Amazon fulfills their orders and, upon information and belief, they allow Amazon to fulfill orders from their storefront with products that do not come from Defendants' inventory, including fake, knockoff, and tampered with products.  Defendants' failure to comply with this quality control requirement results in unknowing consumers purchasing fake, knockoff, and tampered with products from Defendants' storefront.

129.    Defendants do not comply with Otter's quality control requirements because, upon information and belief, they sell products as "new" that have been opened or repackaged. Upon information and belief, Defendants allow products that are returned to Amazon to be repackaged and placed back in their inventory of products as "new" products.  This results in consumers, who believe they are purchasing new Otter Products, actually receiving returned products that, in some cases, have been tampered with.  As set forth above, consumers have complained that Defendants sold them used products that were advertised as new.

130.    Defendants do not comply with Otter's quality control requirements related to the handling, packaging, and shipping of products because, upon information and belief, they do not package and ship their products in accordance with Otter's requirements and package and ship products in a manner that allows them to become damaged.

131.    Defendants' failure to abide by these quality controls interferes with Otter's quality controls and prevents Otter from exercising control over the quality of products Defendants sell bearing the Otter Trademarks.  Otter is unable to audit Defendants to ensure they are complying with Otter's quality controls and/or close their account if they fail to comply with Otter's quality control requirements.

132.    Defendants' failure to comply with these quality controls also interferes with Otter's quality controls because it prevents Otter from being able to obtain Defendants' assistance with any recall or consumer safety information efforts that may arise related to any products they are selling or have sold in the past.

133.    Defendants also do not comply with Otter's customer service requirements because they are not qualified or trained to accurately describe, demonstrate, and sell the products in their inventory and to advise customers on how to use Otter Products safely and properly.

134.    Defendants also do not comply with Otter's customer service requirements because they do not, and are unable to, provide the advice to consumers that Otter requires of its Authorized Resellers and do not provide the type of ongoing support and response to consumer inquiries that Otter requires of its Authorized Resellers.

135.    Defendants do not comply with Otter's quality control and customer service requirements because they do not take appropriate steps to address negative reviews from customers and do not cooperate with Otter in investigating negative product reviews.

**Defendants Are Infringing On The Otter Trademarks By Selling Products Bearing The Otter Trademarks That Are Not Subject To, Do Not Abide By, And Interfere With Otter's Quality Controls And Customer Service Requirements**

136.    For all of the reasons set forth above, the products Defendants sell bearing the Otter Trademarks fail to adhere to the extensive and legitimate quality controls that Otter exercises over Otter Products to protect consumers and its brand goodwill.

137.    The products sold by Defendants are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements.

138.    Because the products Defendants sell are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Otter Products.

139.    Because the products Defendants sell are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are not genuine Otter Products.

140.    Defendants' unauthorized sale of products bearing the Otter Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Otter Products, when, in fact, they are not.

141.    Defendants' unauthorized sale of products bearing the Otter Trademarks infringes on the Otter Trademarks and diminishes their value.

142.    Despite these facts, Defendants have sold, and continue to sell, products bearing the Otter Trademarks through their Amazon and Walmart storefronts without Otter's consent.

143.    Upon information and belief, through their interactive Amazon and Walmart storefronts, Defendants have advertised and marketed infringing products bearing the Otter Trademarks to consumers in Colorado.

144.    Upon information and belief, through their interactive Amazon and Walmart storefronts, Defendants have accepted and fulfilled orders of infringing products bearing the Otter Trademarks from consumers in Colorado.

145.    Upon information and belief, through their interactive Amazon and Walmart storefronts, Defendants have shipped infringing products bearing the Otter Trademarks to Colorado.

**Defendants Are Infringing On The OtterBox Trademark By Selling Products Bearing The OtterBox Trademarks That Do Not Come With The OtterBox Warranty**

146.     As set forth above, genuine OtterBox Products purchased from Otter and its Authorized Resellers who comply with Otter's quality controls come with the OtterBox Warranty.

147.     Because Defendants are not Authorized Resellers of OtterBox Products and do not comply with Otter's quality controls, the products they sell bearing the OtterBox Trademarks do not come with the OtterBox Warranty.

148.     Because the products Defendants sell do not come with the OtterBox Warranty, they are materially different from genuine OtterBox Products.

149.     Defendants' unauthorized sale of products bearing the OtterBox Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine OtterBox Products that come with the OtterBox Warranty, when, in fact, they are not.

150.     Defendants' unauthorized sale of products bearing the OtterBox Trademarks infringes on the OtterBox Trademarks and diminishes their value.

151.     Despite these facts, Defendants have sold, and continue to sell, products bearing the OtterBox Trademarks through their Amazon and Walmart storefronts without Otter's consent.

**Defendants Are Engaging In False Advertising By Falsely Representing That The Products They Sell Come With The OtterBox Warranty**

152.     In addition to infringing on the Otter Trademarks, Defendants also falsely advertise that the products they sell come with the OtterBox Warranty.

153.    Defendants' Amazon product listings for OtterBox Products state that the products are covered by the OtterBox Warranty.   For example, Defendants are listing the following product that specifically states that it comes with the OtterBox Warranty:



154.    In addition to the language in the product listings, Defendants are also representing that their products come with the OtterBox Warranty because they have listed the products as "New."   Pursuant to Amazon's policies, a "New" product listing comes with the "original manufacturer's warranty":

**New:**

Just like it sounds. A brand-new, unused, unopened item in its original packaging, with all original packaging materials included. Original protective wrapping, if any, is intact. Original manufacturer's warranty, if any, still applies, with warranty details included in the listing comments.

https://sellercentral.amazon.com/gp/help/external/200339950?language=en_US&ref=efph_2003 39950_cont_521.

155.    As set forth above, the products Defendants sell do not come with the OtterBox Warranty.   Thus, by representing to consumers that the products they sell are "New" and come with the OtterBox Warranty, Defendants are falsely advertising the products they are selling.

**Otter Has Repeatedly Attempted To Stop Defendants'**
**Illegal Sale Of Products Bearing The Otter Trademarks But Defendants**
**Continue To Willfully Infringe On The Otter Trademarks**

156.    After Otter discovered products bearing the Otter Trademarks being illegally sold on the "Re-Com" and "Simple Cell Inc" storefronts, Otter investigated the storefront to determine who was operating the storefront.

157.    After conducting an investigation, Otter identified Defendants as the owner and operator of the "Re-Com" and "Simple Cell Inc" storefronts.

158.    On or about November 5, 2018, counsel for Otter sent a cease and desist letter to counsel for Defendants notifying Defendants of their illegal conduct.   The letter advised Defendants that they were infringing on the Otter Trademarks, falsely advertising Otter Products, tortiously interfering with Otter's contracts, and causing harm to Otter. The letter demanded that Defendants immediately cease selling products bearing the Otter Trademarks.

159.    Counsel for Defendants did not reply to this letter and continued to offer products bearing the Otter Trademarks on the "Re-Com" and "Simple Cell Inc" storefronts.

160.    On or about November 13, 2018, counsel for Otter sent counsel for Defendants an email attaching the letter dated November 5, 2018.  The email again advised Defendants of their unlawful conduct and demanded that they cease selling products bearing the Otter Trademarks.

161.    Defendants continued to offer products bearing the Otter Trademarks on the "Re-Com" and "Simple Cell Inc" storefronts.

162.    On or about November 19, 2018, counsel for Otter sent another cease and desist letter to counsel for Defendants.   The letter notified Defendants that Otter was preparing a lawsuit against them and that they were under an obligation to preserve all documents and

information regarding their acquisition and sale of products bearing the Otter Trademarks.  The letter further notified Defendants that they were injuring Otter in Colorado through their illegal actions and that they would be subject to personal jurisdiction in Colorado if they continued to engage in their conduct.

163.    Defendants did not reply to this letter and continue to offer products bearing the Otter Trademarks on the "Re-Com" and "Simple Cell Inc" storefronts.

164.    Defendants have continued to engage in their illegal activities and sale of products bearing the Otter Trademarks.

165.    As discussed above, the products Defendants sell are not genuine Otter Products and are materially different from genuine Otter Products because they do not come with the OtterBox Warranty and are not subject to, interfere with, and do not comply with Otter's quality controls.

166.    By continuing to sell non-genuine products bearing the Otter Trademarks, Defendants have interfered with Otter's ability to exercise control over products being sold bearing the Otter Trademarks.

167.    Defendants have also misled, and continue to mislead, consumers into believing they are purchasing genuine Otter Products that come with the OtterBox Warranty when, in fact, they are not.

168.    Defendants' actions infringe on the Otter Trademarks.

169.    Further, Defendants' disregard of communications from Otter and continued selling of non-genuine products, despite being informed of its unlawful conduct, demonstrates that they are acting intentionally, willfully, and maliciously.

**Defendants Are Tortiously Interfering With Otter's Agreements
With Its Authorized Resellers**

170.    Upon information and belief, Defendants have purchased Otter Products from Otter's Authorized Resellers for purposes of reselling them on the Internet.

171.    The Otter Rules prohibit Otter's Authorized Resellers from selling Otter Products to third parties who intend to resell the products.

172.    Defendants were informed of this prohibition by at least November 5, 2018. Indeed, the cease and desist letters Otter sent Defendants on November 5, 2018 informed Defendants that Otter restricts the manner in which Authorized Resellers may sell Otter Products and that Authorized Resellers may sell Otter Products only to end-user customers through authorized channels and are specifically prohibited from selling products to resellers or any person or entity they know or have reason to know intends to resell the products.

173.    Defendants were also informed that by purchasing Otter Products from an Authorized Reseller for purposes of resale, they were causing a breach of the agreement between Otter and its Authorized Reseller and interfering with Otter's agreements and business relationships.

174.    Defendants were also advised that if they continued to acquire Otter Products from Otter's Authorized Resellers for purposes of resale, they would be liable for tortiously interfering with Otter's contracts and/or business relationships.

175.    Despite being provided this information, upon information and belief, Defendants have continued to acquire Otter Products from Otter's Authorized Resellers.

176.    Upon information and belief, Defendants willfully and knowingly induced unknown Authorized Resellers to breach their agreements with Otter so that it could acquire Otter Products and resell them.

**Otter Has Suffered Significant Harm
As A Result Of Defendants' Conduct**

177.    As set forth above, the unauthorized sale of products bearing the Otter Trademarks through unauthorized sellers, such as Defendants, has caused significant harm to the OtterBox and LifeProof brands.

178.    When a consumer receives a non-genuine, damaged, or poor quality product that does not come with the OtterBox Warranty from an unauthorized seller, such as Defendants, the consumer associates that negative experience with Otter.  As such, Defendants' ongoing sale of unauthorized products bearing the Otter Trademarks harms the OtterBox and LifeProof brands.

179.    Plaintiffs have suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions, including, but not limited to, loss of sales, damage to their intellectual property, and damage to their existing and potential business relations.

180.    Plaintiffs have suffered, and will continue to suffer, irreparable harm to their reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

181.    Plaintiffs are entitled to injunctive relief because Defendants will continue to unlawfully sell Otter Products and infringe on the Otter Trademarks, causing continued irreparable harm to Plaintiffs' reputation, goodwill, relationships, intellectual property, and brand integrity.

182.     Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

183.     Defendants' willful violations of the Otter Trademarks and continued pattern of misconduct demonstrate intent to harm Plaintiffs.

## FIRST CAUSE OF ACTION
### Trademark Infringement
### 15 U.S.C. §§ 1114 and 1125(a)(1)(a)

184.     Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

185.     Plaintiffs are the owners of the Otter Trademarks.

186.     Plaintiffs have registered the Otter Trademarks with the United States Patent and Trademark Office.

187.     The Otter Trademarks are valid and subsisting trademarks in full force and effect.

188.     Defendants willfully and knowingly used, and continue to use, the Otter Trademarks in interstate commerce for purposes of selling products bearing the Otter Trademarks on the Internet without Plaintiffs' consent.

189.     The products Defendants sell bearing the Otter Trademarks are not authorized for sale by Plaintiffs.

190.     The products Defendants sell bearing the OtterBox Trademarks do not come with the OtterBox Warranty.

191.     Otter has established and implemented legitimate and substantial quality controls that genuine Otter Products must comply with.

192.     Otter abides by these quality controls and requires all of its Authorized Resellers to abide by these quality controls.

193.     Otter's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

194.     The products Defendants sell bearing the Otter Trademarks are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements.

195.     Because the products Defendants sell bearing the Otter Trademarks do not come with the OtterBox Warranty, and are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Otter Products.

196.     Because the products Defendants sell bearing the Otter Trademarks do not come with the OtterBox Warranty, and are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are not genuine Otter Products.

197.     Defendants' unauthorized sale of products bearing the Otter Trademarks interferes with Otter's quality controls and ability to exercise quality control over products bearing the Otter Trademarks.

198.     Defendants' unauthorized sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer come with the OtterBox Warranty and are subject to and abide by Otter's quality controls when, in fact, they do not.

199.    Defendants' unauthorized sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Otter Products when, in fact, they are not.

200.    Defendants' unauthorized sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with Otter when, in fact, they are not.

201.    Defendants' unauthorized use of the Otter Trademarks has infringed upon and materially damaged the value of the Otter Trademarks and caused significant damage to Otter's business relationships.

202.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and continue to suffer immediate and irreparable harm.  Plaintiffs have also suffered, and continue to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

203.    Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Otter Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

204.    Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

205.    Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Otter Trademarks.

## SECOND CAUSE OF ACTION
### False Advertising
### 15 U.S.C. § 1125(a)(1)(b)

206.    Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

207.    Otter is the owner of the OtterBox Trademarks.

208.    Otter has registered the OtterBox Trademarks with the United States Patent and Trademark Office.

209.    The OtterBox Trademarks are valid and subsisting trademarks in full force and effect.

210.    Through their Amazon and Walmart storefronts, Defendants have willfully and knowingly used, and continue to use, the OtterBox Trademarks in interstate commerce for purposes of advertising, promoting, and selling OtterBox Products without Otter's consent.

211.    Defendants' advertisements and promotions of their products unlawfully using the OtterBox Trademarks have been disseminated to the relevant purchasing public.

212.    Defendants have used, and continue to use, the OtterBox Trademarks to falsely advertise that the products they sell, including, but not limited to, falsely advertising that the products they sell come with the OtterBox Warranty when, in fact, they do not.

213.    OtterBox Products purchased from Otter and its Authorized Resellers who comply with Otter's quality controls come with the OtterBox Warranty.

214.    Otter cannot exercise its quality controls over products sold by unauthorized sellers, such as Defendants.  As such, products bearing the OtterBox Trademarks that are sold by unauthorized sellers who do not comply with Otter's quality controls do not come with the OtterBox Warranty.

215.    The products Defendants sell bearing the OtterBox Trademarks are not authorized for sale by Otter.

216.    The products Defendants sell bearing the OtterBox Trademarks do not come with the OtterBox Warranty.

217.    Defendants falsely advertise that the products they sell bearing the OtterBox Trademarks come with the OtterBox Warranty.  As discussed above, Defendants' product listings specifically state they come with the OtterBox Warranty.  Defendants also advertise that the products they sell are "New" products that come with the OtterBox Warranty.

218.    This representation is false because the products Defendants sell bearing the OtterBox Trademarks do not come with the OtterBox Warranty.

219.    Defendants' use of the OtterBox Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the OtterBox Trademarks misrepresents the nature, characteristics, qualities, and origin of Defendants' products because it suggests that the products come with the OtterBox Warranty when, in fact, they do not.

220.    Defendants' use of the OtterBox Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the OtterBox Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for

sale are genuine and authentic OtterBox Products that come with the OtterBox Warranty when, in fact, they are not.

221.    Defendants' use of the OtterBox Trademarks in connection with the unauthorized advertising, promotion, and sale of products bearing the OtterBox Trademarks is likely to cause confusion, cause mistake, or deceive because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with Otter when, in fact, they are not.

222.    Defendants' unauthorized and deceptive use of the OtterBox Trademarks is material and likely to influence customers to purchase the products they sell, as consumers are likely to believe that products Defendants advertise using the OtterBox Trademarks are genuine OtterBox Products that come with the OtterBox Warranty when, in fact, they do not.

223.    Defendants' unauthorized use of the OtterBox Trademarks in advertising, and otherwise, infringes on the OtterBox Trademarks.

224.    As a proximate result of Defendants' actions, Otter has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

225.    Otter is entitled to recover its damages caused by Defendants' infringement of the OtterBox Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

226.    Otter is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Otter will suffer irreparable harm.

227.   Otter is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the OtterBox Trademarks.

## THIRD CAUSE OF ACTION
### Unfair Competition
### 15 U.S.C. § 1125(a)

228.   Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

229.   Plaintiffs are the owners of the Otter Trademarks.

230.   Plaintiffs have registered the Otter Trademarks with the United States Patent and Trademark Office.

231.   The Otter Trademarks are valid and subsisting trademarks in full force and effect.

232.   Defendants have willfully and knowingly used, and continue to use, the Otter Trademarks in interstate commerce for purposes of selling Otter Products without Otter's consent.

233.   The products Defendants advertise and sell bearing the Otter Trademarks are not authorized for sale by Otter.

234.   The products Defendants advertise and sell bearing the OtterBox Trademarks do not come with the OtterBox Warranty.

235.   Otter has established and implemented legitimate and substantial quality controls that genuine Otter Products must comply with.

236.   Otter abides by these quality controls and requires all of its Authorized Resellers to abide by these quality controls.

237.    Otter's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

238.    The products Defendants advertise and sell bearing the Otter Trademarks are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements.

239.    Because the products Defendants advertise and sell bearing the Otter Trademarks do not come with the OtterBox Warranty, and are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Otter Products.

240.    Because the products Defendants advertise and sell bearing the Otter Trademarks do not come with the OtterBox Warranty, and are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants advertise and sell are not genuine Otter Products.

241.    Defendants' unauthorized advertisement and sale of products bearing the Otter Trademarks interferes with Otter's quality controls and ability to exercise quality control over products bearing the Otter Trademarks.

242.    Defendants' unauthorized advertisement and sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer come with the OtterBox Warranty and are subject to and abide by Otter's quality controls when, in fact, they are not.

243.    Defendants' unauthorized advertisement and sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it

suggests that the products Defendants advertise and offer for sale are genuine Otter Products when, in fact, they are not.

244.    Defendants' unauthorized advertisement and sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are sponsored by, authorized by, or otherwise connected with Otter when, in fact, they are not.

245.    Defendants' unauthorized use of the Otter Trademarks has infringed upon and materially damaged the value of the Otter Trademarks and caused significant damage to Otter's business relationships.

246.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

247.    Plaintiffs are entitled to recover their damages caused by Defendants' infringement of the Otter Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

248.    Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116 because they have no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Plaintiffs will suffer irreparable harm.

249.    Plaintiffs are entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Otter Trademarks.

### FOURTH CAUSE OF ACTION
### Trademark Dilution
### 15 U.S.C. § 1125(c)

250.    Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

251.    Otter is the owner of the OtterBox Trademarks.

252.    Otter has registered the OtterBox Trademarks with the United States Patent and Trademark Office.

253.    The OtterBox Trademarks are valid and subsisting trademarks in full force and effect.

254.    Otter filed the OTTERBOX® trademark in April 2009, and it was registered in May 2010.  Otter has actively, continuously, and exclusively used the OTTERBOX® trademark since that time.

255.    Otter has expended substantial time, effort, money, and resources advertising and promoting OtterBox Products with the OTTERBOX® trademark.

256.    Otter markets, advertises, and sells products using the OTTERBOX® trademark throughout the United States.

257.    The OTTERBOX® trademark is the means by which OtterBox Products are distinguished from others in the marketplace.

258.    The OtterBox name, brand, and image is well-recognized by consumers throughout the United States for Otter's mobile device cases and accessories, and outdoor products.

259.    Consumers recognize and associate the OtterBox name with quality.

260.    Otter has implemented legitimate and substantial quality controls that it requires all of its Authorized Resellers to follow to protect the OtterBox name and brand.

261.    Because of the quality, durability, and dependability of OtterBox Products and Otter's use of the OTTERBOX® trademark, consumers trust the OtterBox name and OtterBox Products.

262.    As a result of Otter's long, continuous, and exclusive use of the OTTERBOX® Trademark, the OTTERBOX® Trademark has acquired a secondary meaning associated by consumers and the public.

263.    Otter is widely recognized as the designated source of goods bearing the OTTERBOX® Trademark.

264.    For these reasons, since at least 2009, the OTTERBOX® Trademark has been famous, distinctive, and a widely recognized mark by the consuming public.

265.    After the OTTERBOX® Trademark became famous, Defendants willfully and knowingly used, and continue to use, the OTTERBOX® Trademark in commerce for purpose of selling products on the Internet without Otter's consent.

266.    The products Defendants sell bearing the OTTERBOX® Trademark do not come with the OtterBox Warranty and are not subject to, do not abide by, and interfere with Otter's quality controls.

267.    The products Defendants sell bearing the OTTERBOX® Trademark are materially different from genuine OtterBox Products sold by Otter and its Authorized Resellers.

268.    Because the products Defendants sell do not come with the OtterBox Warranty and are not subject to, do not abide by, and interfere with Otter's quality controls, consumers

who purchase products from Defendants are more likely to receive a poor quality, damaged, or defective product and are more likely to have an unsatisfactory customer experience.

269.    Consumers who receive poor quality products that do not come with the OtterBox Warranty from Defendants associate that negative experience with Otter and the OTTERBOX® trademark.

270.    Consumers who receive such products from Defendants submit negative online reviews disparaging Otter and the OTTERBOX® trademark.  These negative reviews influence other consumers and cause them to become less likely to purchase OtterBox Products and cause them to become less likely to trust products bearing the OTTERBOX® trademark.

271.    As a result, Defendants' unauthorized and willful use of the OTTERBOX® trademark has tarnished and diluted the OTTERBOX® trademark.

272.    As a proximate result of Defendants' actions, Otter has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

273.    Otter is entitled to recover its damages caused by Defendants' infringement of the OTTERBOX® Trademark and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

274.    Otter is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Otter will suffer irreparable harm.

275.     Otter is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the OTTERBOX® Trademark.

## FIFTH CAUSE OF ACTION
### Common Law Trademark Infringement

276.     Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

277.     Plaintiffs are the owners of the Otter Trademarks.

278.     Plaintiffs have registered the Otter Trademarks with the United States Patent and Trademark Office.

279.     The Otter Trademarks are valid and subsisting trademarks in full force and effect.

280.     The Otter Trademarks are distinctive and widely recognized by the consuming public.  Otter Products are sold and purchased through Otter's Authorized Resellers throughout the United States, including Colorado.

281.     Otter is widely recognized as the designated source of goods bearing the Otter Trademarks.

282.     Defendants willfully and knowingly used, and continue to use, the Otter Trademarks in interstate commerce for purposes of selling Otter Products on the Internet without Otter's consent.

283.     The products Defendants sell bearing the Otter Trademarks are not authorized for sale by Otter.

284.    The products Defendants sell bearing the OtterBox Trademarks do not come with the OtterBox Warranty.

285.    Otter has established and implemented legitimate and substantial quality controls that genuine Otter Products must comply with.

286.    Otter abides by these quality controls and requires all of its Authorized Resellers to abide by these quality controls.

287.    Otter's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

288.    The products Defendants sell bearing the Otter Trademarks are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements.

289.    Because the products Defendants sell bearing the Otter Trademarks do not come with the Otter Warranty, and are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Otter Products.

290.    Because the products Defendants sell bearing the Otter Trademarks do not come with the OtterBox Warranty, and are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are not genuine Otter Products.

291.    Defendants' unauthorized sale of products bearing the Otter Trademarks interferes with Otter's quality controls and ability to exercise quality control over products bearing the Otter Trademarks.

292.    Defendants' unauthorized sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer come with the OtterBox Warranty and are subject to and abide by Otter's quality controls when, in fact, they do not.

293.    Defendants' unauthorized sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Otter Products when, in fact, they are not.

294.    Defendants' unauthorized sale of products bearing the Otter Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with Otter when, in fact, they are not.

295.    Defendants' unauthorized use of the Otter Trademarks has infringed upon and materially damaged the value of the Otter Trademarks and caused significant damage to Otter's business relationships.

296.    As a proximate result of Defendants' actions, Plaintiffs have suffered, and will continue to suffer, damage to their business, goodwill, reputation, and profits in an amount to be proven at trial.

297.    Plaintiffs are entitled to recover exemplary damages because Defendants have acted with fraud, malice, and willful and wanton conduct.

## SIXTH CAUSE OF ACTION
### Deceptive Trade Practices Under Colo. Rev. Stat. § 6-1-101 *et seq.*

298.    Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

299.   Plaintiffs are the owners of the Otter Trademarks.

300.   Plaintiffs have registered the Otter Trademarks with the United States Patent and Trademark Office.

301.   The Otter Trademarks are valid and subsisting trademarks in full force and effect.

302.   Defendants knowingly used, and continue to use, the Otter Trademarks in commerce in connection with the sale and advertising of products without Otter's consent.

303.   The products Defendants advertise and sell bearing the Otter Trademarks are not authorized for sale by Otter.

304.   The products Defendants sell bearing the OtterBox Trademarks do not come with the OtterBox Warranty.

305.   Otter has established and implemented legitimate and substantial quality controls that genuine Otter Products must comply with.

306.   Otter abides by these quality controls and requires all of its Authorized Resellers to abide by these quality controls.

307.   Otter's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

308.   The products Defendants sell bearing the Otter Trademarks are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements.

309.   Because the products Defendants sell bearing the Otter Trademarks do not come with the OtterBox Warranty, and are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Otter Products.

310.    Because the products Defendants sell bearing the Otter Trademarks do not come with the OtterBox Warranty, and are not subject to, do not abide by, and interfere with Otter's quality controls and customer service requirements, the products Defendants sell are not genuine Otter Products.

311.    Defendants knowingly used, and continue to use, the Otter Trademarks in commerce and in the course of their business to pass off their goods as those of Otter.

312.    Defendants knowingly used, and continue to use, the Otter Trademarks in commerce and in the course of their business, to make false representations as to source, sponsorship, approval and/or certification of their products.

313.    Defendants knowingly used, and continue to use, the Otter Trademarks in commerce and in the course of their business, to make false representations as to their affiliation, connection, or association with or certification by Otter.

314.    Defendants' use of the Otter Trademarks in connection with the unauthorized sale and advertising of products is likely to cause confusion, cause mistake, or deceive an appreciable number of ordinarily prudent purchasers as to the affiliation, connection, association, sponsorship or approval of Otter because it suggests that the products Defendants offer for sale originate from, or are sponsored, authorized, or otherwise connected with Otter.

315.    Defendants' unauthorized sale of products bearing the Otter Trademarks, and unauthorized use of the Otter Trademarks in advertising constitute unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*

316.    Defendants' unauthorized sale of products bearing the Otter Trademarks, and unauthorized use of the Otter Trademarks in advertising materially damages the value of the Otter Trademarks and causes significant damages to Otter's business relations.

317.    Defendants' unauthorized sale of products bearing the Otter Trademarks, and unauthorized use of the Otter Trademarks in the course of their business, vocation, or occupation constitute unfair, deceptive, and unlawful trade practices in violation of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101 *et seq.*

318.    Defendants' unauthorized sale of products bearing the Otter Trademarks, and unauthorized use of the Otter Trademarks significantly impacts the public as actual or potential consumers of Otter Products.

319.    Plaintiffs have been damaged in the course of their business by Defendants' unfair, deceptive, and unlawful trade practices.

320.    Defendants have acted in bad faith and engaged in fraudulent, willful, knowing, and intentional conduct.

321.    Plaintiffs are entitled to recover damages, treble damages, and reasonable attorneys' fees and costs pursuant to Colo. Rev. Stat. § 6-1-113.

322.    Plaintiffs are entitled to recover exemplary damages because Defendants have acted with fraud, malice, and willful and wanton conduct.

### SEVENTH CAUSE OF ACTION
**Tortious Interference with Contract and Business Relations**

323.    Plaintiffs hereby incorporate the allegations contained in the foregoing Paragraphs as if fully set forth herein.

324.    Otter has entered into agreements with Authorized Resellers to sell Otter Products.   These agreements and the Otter Rules specifically prohibit Otter's Authorized Resellers from selling Otter Products to third parties, such as Defendants, for purposes of resale.

325.    Defendants knew that Otter's agreements with its Authorized Resellers prohibit Otter's Authorized Resellers from selling Otter Products to third parties, such as Defendants, for purposes of resale.

326.    Defendants were provided notice of this prohibition by at least November 5, 2018, through the cease and desist letter they received from Otter.

327.    Despite having knowledge of this prohibition, Defendants knowingly and willfully interfered with the Otter Rules and the agreements between Otter and its Authorized Resellers by inducing Otter's Authorized Resellers to breach their agreements and sell product to Defendants so they could resell them on the Internet.

328.    After being notified of this prohibition, Defendants continued to acquire products from Otter's Authorized Resellers for purposes of selling them on the Internet.

329.    Defendants acted with a wrongful purpose by acquiring Otter Products from Authorized Resellers for the purpose of reselling those products on the Internet in violation of the Otter Rules and Otter's agreements with its Authorized Resellers.

330.    Defendants' actions have caused injury to Otter for which Otter is entitled to compensatory damages in an amount to be proven at trial.

331.    Otter is entitled to recover exemplary damages because Defendants have acted with fraud, malice, and willful and wanton conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment as follows:

A.      Judgment in favor of Plaintiffs and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B.      That a permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

      i)      Prohibiting the Enjoined Parties from advertising or selling, via the Internet or otherwise, all Otter Products;

      ii)     Prohibiting the Enjoined Parties from using the Otter Trademarks in any manner, including advertising on the Internet;

      iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Otter Products as well as any products bearing the Otter Trademarks;

      iv)     Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Otter Trademarks including: invoices, correspondence with vendors and distributors, bank records,

account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing this trademark;

v)     Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any Otter Products, or the Otter Trademarks;

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from the Internet search engines (such as Google, Yahoo!, and Bing), to remove from the Internet any uses of the Otter Trademarks which associate Otter Products or the Otter Trademarks with the Enjoined Parties or the Enjoined Parties' website;

vii)     Requiring the Enjoined Parties to take all action to remove unauthorized uses of the Otter Trademarks from the Internet, including from the website www.amazon.com and www.walmart.com;

C.     An award of attorneys' fees, costs, and expenses;

D.     Such other and further relief as the Court deems just, equitable and proper.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all issues so triable.

Dated this 5th day of December 2018.

Respectfully submitted,

*s/Martha L. Fitzgerald*

Martha L. Fitzgerald, #14078
Brownstein Hyatt Faber Schreck, LLP
410 Seventeenth Street, Suite 2200
Denver, Colorado 80202-4432
Phone: (303) 223-1472
Email: mfitzgerald@bhfs.com

Tyler B. Pensyl (Ohio Bar. No. 0080649)
Vorys, Sater, Seymour and Pease LLP
52 East Gay Street
Columbus, Ohio 43216
Phone: (614) 464-6334
Facsimile: (614) 719-5072
Email: tbpensyl@vorys.com

*Counsel for Plaintiffs Otter Products, LLC and TreeFrog Developments, Inc.*

Plaintiffs' Address:
OtterProducts, LLC
209 South Meldrum St.
Fort Collins, CO 80521

TreeFrog Developments, Inc.
209 South Meldrum St.
Fort Collins, CO 80521